IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DURECO K. BROWN,
     Plaintiff,

vs.                                 Case No.:  3:13cv545/RV/EMT

D. McGOWAN
and M. NICHOLS,
     Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Dureco K. Brown ("Brown"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma  pauperis ("IFP"), commenced this civil rights action by filing a complaint under 42 U.S.C. § 1983 (doc. 1).  Brown subsequently filed a Fourth Amended Complaint, which is the operative pleading (doc. 24).  This cause is now before the court on Defendants' motion to dismiss (doc. 54).  Plaintiff responded in opposition to the motion (doc. 61).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b).  For the reasons set forth below, the court recommends that the motion to dismiss be granted in part.

I.     ALLEGATIONS OF FOURTH AMENDED COMPLAINT

      Brown alleges in March of 2013, while he was housed at Calhoun Correctional Institution, Dr. Salvador diagnosed him with an inflamed prostate and "gastrointestinal inflammatory disease" (doc. 24 at 5).  Brown alleges Dr. Salvador prescribed Terazosin and Lactulose HCL, scheduled follow-up appointments to monitor his condition, and advised Brown that if his condition worsened, he would refer him to a gastro-intestinal specialist (*id.*).  Brown alleges that upon his transfer to Santa Rosa Correctional Institution ("SRCI") on April 4, 2013, he was medically screened by

Defendant Nichols, who is an Advanced Registered Nurse Practitioner ("ARNP") (*id.*).  He alleges he informed ARNP Nichols that Dr. Salvador had diagnosed him with "gastrointestinal inflammatory disease," prescribed medication, and scheduled follow-up appointments to monitor his condition (*id.*).  Brown alleges ARNP Nichols reviewed his medical file during the medical intake and thus was aware of Dr. Salvador's diagnosis and treatment (*id.*).  He alleges Nichols told him she would follow-up with Dr. Salvador's treatment (*id.*).

Brown alleges two months later, on June 9, 2013, he informed Defendant McGowan, who is an Officer Medical Chief II ("OMC-II"), that medical staff failed to schedule follow-up appointments, refill his prescription for Lactulose, or schedule him for a "speciality clinic" (doc. 24 at 6).  Brown alleges he also informed McGowan that he was in great pain and suffering due to his condition (*id.*).  Brown alleges McGowan failed to refer him to a doctor or specialty clinic (*id.*).

Brown alleges three days later, on June 12, 2013, he wrote an inmate request to ARNP Nichols informing her that he had not received a refill for his Lactulose prescription, he had not received an appointment with a doctor, the medical department had denied his sick calls requests, and he had blood in his stool (doc. 24 at 6).  Brown alleges the next day, he submitted two sick call requests, one relating to lower back pain, and the other complaining that he suffered "extreme pain and agony" during defecation and had blood in his stool, but he had not been seen by a doctor, and his prescription had not been refilled (*id.*).  Brown alleges he was taken to the medical department on June 18, 2013, and after he informed an unidentified nurse that he had blood in his stool and pain in his lower back, the nurse told him nothing was wrong with him and ordered him to return to his cell (*id.*).  Brown alleges on June 28, 2013, he filed a grievance with OMC-II McGowan regarding the medical department's failure to provide treatment on June 18 (*id.* at 7).  Brown alleges McGowan knew from his medical file that he had been diagnosed with gastrointestinal inflammatory disease and an enlarged prostate, that he had been prescribed Terazosin and Lactulose HCL for his condition, and that he had not seen a doctor or received the prescribed medication, but McGowan failed to prescribe medication or schedule an appointment with a doctor, specialist, or specialty clinic (*id.*).

Brown alleges on July 12, 2013, he submitted a sick call request to ARNP Nichols informing her that his condition had "deteriorated" and that he was experiencing pain during defecation and

had blood in his stool (doc. 24 at 7).  Brown alleges Nichols never responded to his sick call request (*id.*).  Brown alleges he filed a grievance with OMC-II McGowan on July 21, 2013, again informing him that he had blood in his stool due to the lack of medical treatment (*id.*).  Brown alleges he also told McGowan that he feared that his condition was life threatening if he did not receive medical treatment (*id.*).  Brown alleges McGowan refused to provide any medical treatment or direct his subordinates to provide treatment (*id.*).  He alleges he filed a formal grievance, which was denied (*id.*).  He alleges he appealed to the FDOC's Central Office, but the appeal was denied (*id.*).  Brown further alleges on September 16, 2013, he was examined by medical staff and prescribed docusate sodium (*id.*).

Brown claims that Defendants Nichols and McGowan denied him adequate medical treatment in violation of the Eighth Amendment (doc. 24 at 8).  He states he has suffered pain, suffering, and "emotional stress" as a result of their conduct (*id.*).  He seeks compensatory damages in the amount of $775,000.00, punitive damages in the amount of $475,000.00, and any additional relief the court deems "just, proper, and equitable" (*id.*).

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure on several grounds.  They first argue that Brown's allegations fail to establish an Eighth Amendment violation (doc. 54 at 4–14).  They additionally argue that Brown's claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment (*id.* at 14–15).  Defendants also argue they are entitled to qualified immunity from Brown's claims for monetary damages against them in their individual capacities (*id.* at 15–18).  Furthermore, Brown may not recover monetary damages against them because his allegations of emotional distress and pain and suffering do not allege more than a de minimis physical injury (*id.* at 18–20).

Brown filed a response to the motion to dismiss, in which he argues the allegations of his Fourth Amended Complaint state a plausible Eighth Amendment claim (doc. 61).

II.     RULE 12(b)(6) STANDARD

In applying the Rule 12(b)(6) standard, the allegations of the complaint are taken as true and are construed in the light most favorable to Brown.  *See* <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  Finally, consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted).

III.   ANALYSIS

A.   Plaintiff's Allegations State a Plausible Eighth Amendment Claim

Defendants contend Brown's allegation that they failed to refill his prescriptions is equivalent to the assertion that he is entitled to refills without further medical determination by other medical personnel, which is not a plausible Eighth Amendment claim (*see* doc. 54 at 6).  Defendants also contend Brown's allegations that ARNP Nichols failed to provide him access to a doctor or a

specialist fail to state a plausible claim (*id.* at 7–9). Defendants contend Brown does not have a right to see a doctor; instead, he only has the right to minimal medical care, which he received when medical staff "monitor[ed] his condition" and "watch[ed] him closely" by seeing him in intake on April 4, 2013, seeing him in the medical department on June 18, 2013, and examining him and prescribing Docusate/Sodium in September 2013 (*id.* at 7, 10). Defendants further contend Brown's complaint that he was not referred to a specialist does not support an Eighth Amendment claim because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support an Eighth Amendment claim (*id.*). Specifically with regard to OMC-II McGowan, Defendants contend Brown's allegations that McGowan denied his grievances and failed to correct the actions of medical staff, without any allegations regarding McGowan's ability to correct the medical staff or to take actions to assist Brown in obtaining medical care, fail to state a basis for liability under Section 1983 (*id.* at 10–14).

Prison officials violate the Constitution when they act with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983. *See* Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To prevail on a claim of deliberate indifference, a plaintiff must show (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury. *See* Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation omitted). Alternatively, a plaintiff can establish a serious medical need by showing that a delay in treatment worsened his or her condition. *Id.*

To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331–32 (11th Cir. 2013) (internal quotation marks omitted). Indeed, to show deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Conduct that is more than mere negligence includes:  (1)

knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all.  *See* McElliott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Liberally construing Brown's allegations, as this court must do in light of his pro se status, Brown alleges not only that Defendants failed to provide the treatment recommended by Dr. Salvador after Salvador evaluated and diagnosed his condition, he alleges Defendants did so without evaluating or monitoring his condition, or otherwise treating him, for a period of months, despite his complaints that his condition was worsening.  Further, contrary to Defendants' argument that Brown failed to include allegations regarding McGowan's ability to correct the medical staff or take actions to assist Brown in obtaining medical care, Brown specifically alleges:  (1) "D. McGowan had the authority to schedule Plaintiff to see a doctor, . . ." (doc. 24 at 6); (2) "D. McGowan had the authority to provide Plaintiff adequate medical care by making arrangements to get Plaintiff's medication refilled, schedule him to see a doctor, specialist, or specialty clinic to evaluate and determine the seriousness of his condition, and he failed to do so." (*id.* at 7); and (3) "D. McGowan had the authority to provide Plaintiff medical care for his gastro-intestinal inflammatory disease" (*id.*).  Accepting Brown's allegations as true, his allegations that he was diagnosed with "gastro-intestinal inflammatory disease" and prescribed medication; that his condition worsened for several months and he suffered "extreme pain and agony," chronic constipation, and blood in his stool; and that Defendants knew of his diagnosis and treatment, and knew of his worsening condition yet failed to evaluate or treat him despite their authority to do so, are sufficient to state an Eighth Amendment claim.  Therefore, dismissal under Rule 12(b)(6) is not appropriate.

B.    Eleventh Amendment Immunity

Defendants contend Brown's suit for monetary damages against them in their official capacities is barred by the Eleventh Amendment (doc. 54 at 14–15).  The Eleventh Amendment protects a State from being sued in federal court without the State's consent.  It thus bars a suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities.  Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).  As a result, parties with claims against a non-consenting State,

such as Florida, or any "arm of the State," must resort to the State's own courts. *See* <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits Brown's federal suit against Defendants in their official capacities. *See* <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Therefore, those claims should be dismissed.

      C.    <u>Qualified Immunity</u>

Defendants assert they are entitled to qualified immunity (*see* doc. 54 at 15–18). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The Supreme Court has explained that "the driving force" behind the qualified immunity doctrine is to ensure that "'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss, <u>Gonzalez</u>, 325 F.3d at 1233, although the defense is more "typically addressed at the summary judgment stage of a case." <u>St. George v. Pinellas Cnty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss on qualified immunity grounds, a plaintiff must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the complained-of act. <u>Pearson</u>, 555 U.S. at 232. A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other. *Id.* at 236.[1]

---

[1] To receive qualified immunity, a public official must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. <u>Gray ex rel. Alexander v. Bostic</u>, 458 F.3d 1295, 1303 (11th Cir. 2006). Here, there can be no dispute that Defendants were acting within their discretionary authority. Therefore, the burden shifts to Brown to show that qualified immunity is not warranted. <u>Vinyard</u>, 311 F.3d at 1346.

The court has already concluded that the facts alleged by Brown are sufficient to constitute a violation of his Eighth Amendment rights, which satisfies the first prong of the qualified immunity analysis.  With regard to the "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted).  A case with materially identical facts is not necessary for the law to be clearly established, "but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (citation omitted).

"[Eleventh Circuit] cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995) (citing Carswell v. Bay Cnty., 854 F.2d 454, 457 (11th Cir. 1988); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).  "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F .3d at 1257.

Accepting Brown's factual allegations as true, the facts demonstrate that Defendants' conduct was deliberately indifferent to his serious medical need in a manner proscribed by Eleventh Circuit precedent.  This is not a case where the plaintiff challenges a delay in treatment of only a few hours.  See Youmans, 626 F.3d at 564–65 (discussing case law distinguishing between short delays and lengthy delays in medical treatment).  Instead, Brown alleges he went without treatment for five months, and the delay had a detrimental effect, namely, worsening of his condition.  He alleges ARNP Nichols and OMC-II McGowan knew that he was in extreme pain and experiencing blood in his stool, and that a physician had diagnosed and prescribed medication for his condition, and by failing to provide treatment or conduct an independent evaluation of his need for such, they allowed him to "needlessly suffer."  Therefore, at this pleading stage of the proceedings, at which the court has the benefit of absolutely no evidence on the matter—such as Defendants' affidavits, others' affidavits, medical records, or any other evidence regarding Brown's medical needs and Defendants'

knowledge of and response to his medical needs—the court concludes that Defendants should not be granted qualified immunity at this time.

    D.    <u>Physical Injury Requirement of Section 1997e(e)</u>

    Defendants contend that pursuant to 42 U.S.C. § 1997e(e), Brown is precluded from bringing this action for monetary damages because he alleges emotional distress and pain and suffering with no allegations of physical injuries that are greater than de minimis (*see* doc. 54 at 18–20).

    In an action pursuant to Section 1983, a plaintiff may recover damages for monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation. *See* <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1231 (11th Cir. 2000). But, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). To satisfy § 1997e(e), a prisoner must allege physical injury that is more than de minimis, but the injury need not be significant. *See* <u>Harris v. Garner</u>, 190 F.3d 1279, 1282, 1286–87 (11th Cir. 1999) (concluding that ordering a prisoner to "dry shave," without more, did not satisfy § 1997e(e)'s physical harm requirement), *reh'g en banc granted, vacated*, 197 F.3d 1059 (11th Cir. 1999), *reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) (en banc ).

    Although the Eleventh Circuit has not adopted a definition of "de minimis" as it pertains to Section 1997e(e), it recently cited positively, albeit in an unpublished decision, the following description by a federal district court in the Fifth Circuit:

> [A]n appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?  In effect, would only home treatment suffice? . . .  A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.  People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. . . .  Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (cited in Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (unpublished)).  District courts in the Eleventh Circuit have cited Luong as persuasive authority.  See, e.g., Green v. Grace, No. 3:08cv406/RV/AK, 2010 WL 63078, at *3–4 (N.D. Fla. Jan. 5, 2010) (unpublished); Daughtry v. Moore, No. 08-00214-KD-C, 2009 WL 1151858, at *5 (S.D. Ala. Apr. 27, 2009) (unpublished); Watkins v. Trinity Serv. Group, No. 8:05-cv-1142-T-24MSS, 2006 WL 3408176, at *4 (M.D. Fla. Nov. 27 2006) (unpublished).  Additionally, the Third and Sixth Circuits have cited the Luong standard positively, although in unpublished opinions.  See Perez v. United States, 330 F. App'x 388, 389 (3d Cir. 2009) (unpublished); Jarriett v. Wilson, 162 F. App'x 394, 400 (6th Cir. 2005) (unpublished).  The Ninth Circuit rejected the Luong standard as "overly restrictive."  Pierce v. County of Orange, 526 F. 3d 1190, 1224 (9th Cir. 2008).

Here, assuming Brown's allegations are true, he had a diagnosable medical condition that required treatment and follow-up by a medical care professional.  Dr. Salvador diagnosed him as suffering from "gastrointestinal inflammatory disease," prescribed Terazosin and Lactulose HCL as treatment, scheduled follow-up appointments to monitor Plaintiff's condition, and noted that Plaintiff would be referred to a specialist if the monitoring revealed his condition had worsened.  Further, Brown alleges he suffered extreme pain and blood in his stool for months, for which he eventually received treatment, specifically a prescription for docusate sodium.  The undersigned expresses no opinion as to whether Brown will ultimately meet the physical injury standard; the court simply concludes that he has alleged enough to avoid dismissal at this stage.  See, e.g., Thompson, 551 F. App'x at 557 (accepting the allegations of the complaint as true, prisoner's allegations of continuing severe headaches, weakness, cold sweats, dizziness, weight loss, numbness in his left arm, and high blood sugar that caused fainting, persisted for over one year, and required medical treatment, were allegations of physical injury that rose above the de minimis threshold).

Accordingly, it respectfully **RECOMMENDED**:

That Defendants' motion to dismiss (doc. 54) be **GRANTED IN PART** as follows:

1.      That the motion be **GRANTED** as to Plaintiff's claims for monetary damages against Defendants in their official capacities, and that those claims be **DISMISSED with prejudice**;

2.      That the motion be **DENIED** as to Plaintiff's remaining claims.

At Pensacola, Florida this 13<u>th</u> day of August 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**